IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK MCCAMEY, | ) | |
| | ) | Civil Action No. 15 – 1108 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| ERNA L. CRAIG, *et al*., | ) | |
| | ) | ECF Nos. 48, 66, 68 |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before the court is a Motion for Summary Judgment filed by Defendants Erna L. Craig, Scott Garner, Jonathan Hollobaugh, Sean Hood, Joseph Podlyon, Joe Reichard, Lester Somerset, and Mark Yassem. (ECF No. 48.) For the following reasons, the Motion will be granted.

**I.    Procedural Background**

Plaintiff, Patrick McCamey ("Plaintiff"), an inmate at the State Correctional Institution Forest, initiated the instant prisoner civil rights action on August 18, 2015,[1] pursuant to 42 U.S.C. § 1983, as well as 42 U.S.C. § 1985. His Complaint was docketed on August 26, 2015

---

[1] This is the filing date under the "mailbox rule." Pennsylvania and federal courts employ the prisoner mailbox rule. *See* Perry v. Diguglielmo, 169 Fed. Appx. 134, 136 n.3 (3d Cir. 2006) (citing Commonwealth v. Little, 716 A.2d 1287 (Pa. Super. Ct. 1998)); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). Under this doctrine, a prisoner's *pro se* pleading is deemed filed when delivered to prison officials for mailing. *See* Burns, 134 F.3d at 113; Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001) (deemed filed when given to proper prison authority or placed in a prison mailbox).

(ECF No. 3), and on January 25, 2016, he filed an Amended Complaint (ECF No. 28), to which Defendants responded on February 8, 2016 (ECF No. 32).

Following discovery, Defendants filed a Motion for Summary Judgment on June 2, 2016. (ECF No. 48.) In response, Plaintiff filed a "Partial Motion to Dismiss Certain Defendants and deny Defendants Motion to Dismiss," wherein Plaintiff requested that his claims against Defendants Craig, Reichard, Podlyon, Hollobach and Somerset be dismissed. (ECF No. 66.) He also responded by filing a "Motion for Partial Summary Judgment to be Granted and Deny Defendants Motion for Summary Judgment," which the Court has construed as a response in opposition to Defendants' Motion for Summary Judgment. (ECF No. 68.) The Motion for Summary Judgment is now ripe for review.

## II. Factual Background

Plaintiff was brought to Mercer County Prison as a pre-trial detainee on September 29, 2014. (ECF No. 28, at p. 2.) On June 22, 2015, Defendant Scott Garner was on duty in Plaintiff's housing unit when Plaintiff asked to see a lieutenant. (ECF No. 28, at p. 4 ¶ 26.) Defendant Garner told Plaintiff that he would have to fill out a request. (ECF No. 28, at p. 4 ¶ 26; ECF No. 50-3, at p. 5.) Plaintiff continued to insist on speaking to a lieutenant because he has been "dealing with low-ass C/Os, request [slips] and grievances for a week." (ECF No. 28, at p. 4 ¶ 27; ECF No. 49, ¶ 5.) When his request continued to be denied, Plaintiff began kicking and hitting his cell door, creating a disruption in the day room, where an attorney was having a meeting with his client.[2] (ECF No. 49, ¶ 7.)

---

[2] Plaintiff does not dispute this assertion, but he objects to the fact that Defendants have not provided any affidavits from the attorney present in the day room to support the assertion. ( ECF No. 70, at ¶ 7.)

2

Defendant Garner then called Defendant Yassem, the lieutenant on duty, to notify him of the situation. Id. Defendant Yassem came to Plaintiff's cell along with Officers Hood, Somerset, and Hollobaugh, and demanded Plaintiff to present his hands through the food tray slot in the cell door so he could be handcuffed. (ECF No. 28, at p. 4 ¶ 28; ECF No. 49, ¶ 11.) Plaintiff did not comply with the order, and instead started to pack his possessions. (ECF No. 49, ¶ 13.) Defendant Yassem gave two more orders for Plaintiff to present his hands so he could be cuffed, but Plaintiff did not comply and continued to pack his things.[3] (ECF No. 49, ¶¶ 14-16.) Upon Plaintiff failing to comply with Defendant Yassem's order, Yassem sprayed him with a 1-2 second burst of pepper spray through the food tray slot in the door, hitting him in the face, head, and chest. (ECF No. 49, ¶ 17; ECF No. 50-3, at p. 6.) Plaintiff still did not comply at this point, and only after Defendant Garner attempted but failed to grab the bag that Plaintiff had packed his things into did Plaintiff drop his bag, turn around, and place his hands thought the slot so he could be cuffed.[4] (ECF No. 49, ¶¶ 19-20.)

Plaintiff was taken to the Restricted Housing Unit (RHU), where he asked for medical attention because he could not see out of his left eye nor hear out of his left ear due to the pepper spray. (ECF No. 28, at p. 5 ¶ 33.) Approximately 15 to 20 minutes after being placed in the RHU, Officer Somerset took Plaintiff to a shower. Id. Plaintiff never received medical attention for the effects of the pepper spray. (ECF No. 28, at p. 6 ¶ 39.)

While confined in the RHU, Plaintiff asked to use the law library. (ECF No. 28, at p. 6 ¶ 43.) When he was given access to the library on the next day permitted to RHU inmates, the computer was not working. (ECF No. 28, at p. 7 ¶ 44.) Plaintiff alleges that he was also denied

---

[3] Plaintiff simply alleges that the incident reports of the officers upon which these facts are based are false. (ECF No. 70, at p. 2)

[4] Plaintiff alleges that Defendant Yassem sprayed a second time into his cell when he went to stick his hands in the slot. (ECF No. 28, at p. 5 ¶¶ 30-31.)

permission to read legal research material in the cell. Id. Plaintiff has filed various grievances regarding use of the law library, including not getting photocopies and not having immediate access to a typewriter, although he was given access to a typewriter later. (ECF No. 49, at p. 7.)

During his incarceration at Mercer County Prison, Plaintiff was temporarily transferred to Lawrence County Jail for several periods. (ECF No. 49, ¶ 39.) The first period was from January 15, 2015 to February 2, 2015; then from February 5, 2015 to March 5, 2015; then from March 6, 2015 to May 4, 2015; then from May 6, 2015 to May 27, 2015, and finally from September 17, 2015 to November 2, 2015. On at least two occasions, Plaintiff personally requested to be transferred to Lawrence County. (ECF No. 28, at p. 8 ¶ 48; ECF No. 49, at ¶ 31.) Plaintiff alleges that two weeks before his first transfer to Lawrence County, he was asked by Deputy Warden Joe Reichard to disclose which correctional officers were involved in illegal activities. (ECF No. 28, at pp. 2-3 ¶¶ 15-16.) Plaintiff alleges that after the first time he was transferred back to Mercer County, Defendant Yassem did the search of his property and withheld his legal paperwork. (ECF No. 28, at p. 3 ¶ 19.) Plaintiff was found guilty on his criminal charges in the Court of Common Pleas of Mercer County on November 17, 2015 and was transferred to SCI-Pittsburgh on January 29, 2016 to serve his sentence. (ECF No. 49, ¶¶ 32, 38.)

### III. **Standard of Review**

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. Nat'l State Bank v. Fed.l Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing Celotex, 477 U.S. at 323-25). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963). *See also* Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing Celotex, *supra*).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* FED. R. CIV. P. 56(c)(2); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

## IV. Discussion

Plaintiff's request that Defendants Craig, Reichard, Podlyon, Hollobach, and Somerset be dismissed from his suit will be granted. As such, the only claims that will be addressed herein are those claims that Plaintiff has raised against Defendants Yassem, Garner, and Hood.

### 1) Excessive Force

Plaintiff claims that Defendants exhibited excessive force when they participated in pepper-spraying him, presumably violating his rights under the Fourteenth Amendment. (ECF

No. 28, at pp. 12-14.) Plaintiff contends that since all he was doing was asking to pack his things, Defendant Yassem's response in pepper-spraying him was "motivated by evil motive or intent." (Id., at p. 12 ¶14.) Defendants counter that the pepper-spray incident does not rise to the level of excessive force. (ECF No. 51, at pp. 5-9.) Defendants maintain that every officer present reported that Plaintiff was given the order to present his hands to be cuffed three times and that he disobeyed each time, and that he was being verbally belligerent before the pepper spray was administered, thus, they maintain that Defendant Yassem's actions were "an appropriate and constitutional attempt to restore order." Id.

The Fourteenth Amendment's Due Process Clause protects a pretrial detainee from the use of excessive force that amount to punishment." Kingsley v. Hendrickson, __ U.S.__, 135 S. Ct. 2466, 2473 (2015) (quoting Graham v. Connor, 490 U.S. 386, 395, n.10 (1989)). Because a pretrial detainee has not been convicted of any crime, the due process clause of the Fourteenth Amendment prohibits the state form imposing punishment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, the Third Circuit Court of Appeals has borrowed the cruel and unusual punishment prohibition of the Eighth Amendment because the due process rights of pretrial detainees are at least as great as the Eighth Amendment rights of convicted and sentenced prisoners. Wolozsyn v. Cty. of Lawrence, 396 F.3d 314, 319 n.5 (3d Cir. 2005).

In order to prevail on a claim of excessive force, a pretrial detainee must prove that "the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 135 S. Ct. at 2472. Objective reasonableness turns on the "facts and circumstances of each particular case. Id. at 2473. (quoting Graham, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley, 135 S. Ct. at 2473. Such a determination

6

must also account for the "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in the judgement' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security." Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547 (1979)).

Factors that may bear on the reasonableness or unreasonableness of the force used include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Kingsley, 135 S. Ct. at 2473.

The Third Circuit has stated:

> [The] use of tear gas is not "a per se violation of the Eighth Amendment…." Soto v. Dickey, 744 F2d 1260, 1270 (7th Cir. 1984). Rather, "[t]he use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." Soto v. Dickey, 744 F2d 1260, 1270 (7th Cir. 1984). See also Michenfelder v. Sumner, 860 F.2d 328, 336 (9th Cir. 1988) (policy allowing use of taser guns on inmate who refused to submit to a strip search does not constitute cruel and unusual punishment); Sprain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (the use of tear gas "in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required."); Clemmons v. Greggs, 509 F.2d 1338, 1340 (5th Cir. 1975) (the use of tear gas when reasonably necessary to subdue recalcitrant prisoners does not violate the Eighth Amendment).

Passmore v. Ianello, 528 F. App'x 144, 147-48 (3d Cir. 2013).

Although there are some minor discrepancies between Plaintiff's account and Defendants' accounts of the events leading up to the use of the pepper spray against him, it is undisputed that he failed to obey Defendant Yassem, causing Defendant Yassem to administer the spray. Plaintiff does not allege in his Amended Complaint how many times he was ordered

7

to present his hands before he was sprayed, but incident reports by Defendants Garner, Yassem, Somerset, Hood, and Hollobaugh all consistently assert that Plaintiff was ordered to "cuff up" three times by Defendant Yassem, and Plaintiff ignored all three orders before the spray was applied. (ECF No. 50-3, at pp. 5-10.) Furthermore, what led to all the officers being present in the first place was due to Plaintiff being verbally and physically disruptive. Plaintiff calls his own credibility into question when he stated in his Amended Complaint that he told Defendant Garner he was sick of dealing with "low-ass C/Os," (ECF No. 28, ¶ 27), but then, in his response to Defendants' concise statement of undisputed material facts, alleges that "Plaintiff never ever once made a comment about 'low ass C/Os.'" (ECF No. 70, ¶ 5.)[5] In any event, it is plain that the undisputed facts at hand do not present a question as to whether the Defendants' actions rise to the level of excessive force. It is objectively reasonable for a correctional officer to resort to pepper-spray when an inmate ignores his verbal command three times, especially in light of the fact that the inmate was already behaving disruptively and officers have a legitimate interest to maintain the order and security of the jail. Defendant Yassem and other officers testified to firing a 1-2 second burst of pepper-spray, which is not a disproportionate use of force under the circumstances.[6]

The Third Circuit has found that use of pepper-spray to subdue an uncooperative inmate, after verbal attempts fail, does not rise to the level of excessive force. Passmore v. Ianello, 528

---

[5] Plaintiff also alleges several times in his "Response to Deny Defendant's Concise Statement of Undisputed Material Facts" that the reason why Defendant Yassem was called to his cell and ended up spraying him was because he would not assist the Defendants "with drugs" or "cooperate with Defendant Garner to receive drugs" or that he "refused to provide them the drugs," allegations that Plaintiff failed to make in his Amended Complaint. (ECF No. 70, at p. 2.) Again, it impinges upon Plaintiff's credibility when he chooses to make such significant allegations in a response and not in the original Amended Complaint.

[6] Although Plaintiff alleges that there was a second burst of pepper-spray administered as well, (ECF No. 28, ¶30), this does not affect the outcome of the Court's determination that the use of force was not excessive.

F.App'x 144, 148 (3d Cir. 2013). Even when an inmate is locked behind a cell door, a court has found that the use of pepper-spray was objectively de minimus. *See* Robinson v. Beckles, 117 F. Supp.3d 528, 536 (D. Del. 2015). Similarly, no excessive force was found when an entire can of pepper-spray was discharged into a cell after inmates did not comply with orders to "cuff up". *See* Brooks v. Smith, No. 3.12-CV-2527, 2014 WL 1917539, at *6 (M.D. Pa. May 13, 2014). Here, there is nothing in the record to indicate that Defendants' decision to pepper-spray Plaintiff was anything but an attempt to keep order, and therefore there is no genuine dispute as regarding the objective reasonableness of Defendant's actions. Accordingly, summary judgment will be granted on this claim.

### 2) **Deliberate Indifference to Medical Needs**

Plaintiff claims that by not providing him with medical attention after he was pepper-sprayed, Defendants exhibited deliberate indifference under the Eighth Amendment. (ECF No. 28, at pp. 11-12.) Defendants argue that Plaintiff has not shown that he suffered any significant injuries that would warrant medical assistance to justify a claim of deliberate indifference. (ECF No. 51, at p. 9.)

Infliction of unnecessary suffering on a prisoner by failure to treat his medical needs is a violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). "The standard enunciated in Estelle is two-pronged: '[i]t requires deliberate indifference on the part of the prison official and it requires the prisoner's medical needs to be serious.'" Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (quoting West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978)).

To show deliberate indifference, the Supreme Court has held that the standard is a subjective one: "the official must both be aware of facts from which the inference could be

9

drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979). The seriousness of the medical need may also be determined by the effect of denying the particular treatment. Monmouth, 834 F.2d at 347.

Defendants do not dispute that Plaintiff received no medical attention after he was exposed to the pepper-spray. Nevertheless, Plaintiff has failed to meet the burden of establishing the two prongs in Estelle—that Defendants were deliberately indifferent to his state after being pepper-sprayed, and that he suffered from a "serious medical need." The fact that Defendants allowed Plaintiff to shower 15 to 20 minutes after being sprayed shows that they were not deliberately indifferent to the effects of the spray. (ECF No. 28, ¶37.) *See* Passmore v. Ianello, 528 F. App'x 144, 148-49 (3d Cir. 2013) (finding a twenty minute delay in letting the plaintiff use the shower and getting him medical attention after being pepper sprayed does not amount to deliberate indifference to a serious medical need.) Furthermore, Defendants allege that Plaintiff continued to be defiant and belligerent after being sprayed and led out of his cell in handcuffs, saying "now you have a problem with me, motherfucker," which may have led to the 15 to 20 minute delay in allowing him to use the shower in the first place. (ECF No. 50-3, at pp. 6-8.) Plaintiff alleges that he asked for medical attention several times after being sprayed, specifically for not being able to hear or see out of his left ear and eye, respectively. (ECF No. 28, at pp.5-6.) However, after he was allowed to shower, Plaintiff does not allege that these symptoms continued, only that he was in "excruciating pain" for the rest of the night. (ECF No. 28, at p. 6

10

¶39.) It is expected that there would be pain and discomfort after being exposed to pepper-spray. Moreover, simply alleging "excruciating pain" is insufficient. Plaintiff fails to provide any further details about his condition and fails to show that his symptoms rise to the level of a serious medical need that would require medical attention. As such, summary judgment will be granted on this claim.

### 3) Retaliation

Plaintiff claims that his transfers to Lawrence County Prison, as well as the withholding of his legal paperwork, were acts of retaliation in response to the conversation he had with Deputy Warden Reichard, in which Plaintiff alleges that Reichard asked him to disclose the identities of correctional officers involved in illegal activity. (ECF No. 28, at pp.10-11.) Defendants contend that Plaintiff's transfers to Lawrence County and the withholding of his paperwork were not acts of retaliation because Plaintiff was not engaging in a constitutionally protected activity. (ECF No. 51, at pp.10-12.)

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[7] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in

---

[7] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

11

the defendants' conduct.[8]  Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  Once all three criteria are met, the burden shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity."  Rauser, 241 F.3d at 333.  This means that "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Id. at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

Plaintiff has failed to allege facts that establish that he was engaged in constitutionally protected conduct.  Plaintiff asserts that the transfers to Lawrence County were retaliatory for "not exercising his involvement with prison employees on the street." (ECF No. 28, ¶ 6.)  This is clearly not a constitutionally protected activity.  However, assuming *arguendo* that Plaintiff asserts that this was a violation of his First Amendment rights, he still has not alleged proper facts that would establish that he was engaging in some sort activity involving his freedom of expression or religion.  Because Plaintiff has not satisfied the first prong of a retaliation claim, it is not necessary to address whether Plaintiff established the latter two prongs.  Summary judgment will therefore be granted.

---

[8] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).  The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See* Lape v. Pennsylvania, 157 F. App'x. 491, 498 (3d Cir. 2005).

### 4) Access to Courts

Finally, Plaintiff claims that he was denied a constitutional right of access to the courts when the law library had various deficiencies that prevented him from doing proper legal research. (ECF No. 28, at pp.14-15.) Defendants argue that the denial of access to the courts is a baseless claim, as Plaintiff was represented by licensed attorneys at the time of his pre-trial detention. (ECF No. 51, at pp. 12-15.) Defendants also counter that Plaintiff has not exhausted his administrative remedies with regard to his denial of access to the law library claim. (ECF No. 51, p. 4.)

Although the Supreme Court has held that the right of access to the courts requires prison authorities to provide inmates with adequate law library or adequate assistance from persons trained in the law, a claim under this right must establish actual injury. Lewis v. Casey, 518 U.S. 343, 351 (1996) (citing Bounds v. Smith, 430 U.S. 817 (1977)). When an inmate shows that an actionable claim which he desired to bring has been lost or rejected, or that presentation of claim is currently being prevented, because capability of filing suit has not been provided, he demonstrates that the state has failed to furnish adequate law library or adequate assistance from persons trained in the law in violation of constitutional right of access to the courts. Id. at 356. See Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Plaintiff does not allege any injuries he incurred as a result of the deficiencies of the law library. Plaintiff only contends that his "law library claim does have merit to assist his attorney to prepare his criminal case." (ECF No. 68, ¶14.) There is no allegation that his ultimate conviction in his criminal matter was a direct result of not having adequate access to legal materials or research. Accordingly, Plaintiff has failed to show that he suffered any actual injury as contemplated under the law. Therefore, summary judgment will be granted.

13

## V. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 48) filed by Defendants Craig, Garner, Hollobaugh, Hood, Podlyon, Reichard, Somerset and Yassem will be granted. Plaintiff's "Partial Motion to Dismiss Certain Defendants and deny Defendants Motion to Dismiss" (ECF No. 66) will be granted to the extent he seeks to voluntarily dismiss his claims against Craig, Reichard, Podlyon, Hollobach, and Somerset. Plaintiff's "Motion for Partial Summary Judgment to be Granted and Deny Defendants Motion for Summary Judgment" (ECF No. 68) will be denied as a motion but construed and considered by the Court as a response in opposition to Defendants' Motion for Summary Judgment. A separate Order will issue.

Dated: October 5, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Patrick S. McCamey
    MJ5305
    SCI Forest
    PO Box 945
    Marienville, PA  16239

    Counsels of record
    *Via CM/ECF Electronic Mail*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK MCCAMEY, | ) | |
| | ) | Civil Action No. 15 – 1108 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| ERNA L. CRAIG, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

**AND NOW**, this 5th day of October, 2016,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendants Craig, Garner, Hollobaugh, Hood, Podlyon, Reichard, Somerset and Yassem (ECF No. 48) is **GRANTED**.

**IT IS FURTHER ORDERED** that the "Partial Motion to Dismiss Certain Defendants and deny Defendants Motion to Dismiss" (ECF No. 66) is granted in part and denied in part. It is granted to the extent that Plaintiff seeks to voluntarily dismiss his claims against Craig, Reichard, Podlyon, Hollobach and Somerset, and in all other respects it is denied.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion for Partial Summary Judgment to be Granted and Deny Defendants Motion for Summary Judgment" (ECF No. 68) will be denied as a motion but construed and considered by the Court as a response in opposition to Defendants' Motion for Summary Judgment.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure

                                                Lisa Pupo Lenihan
                                                United States Magistrate Judge

cc:   Patrick S. McCamey
       MJ5305
       SCI Forest
       PO Box 945
       Marienville, PA  16239

       Counsels of record
       *Via CM/ECF Electronic Mail*